## UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF MISSOURI
## CENTRAL DIVISON

| | |
|---|---|
| STEVEN E. CHAMBERLIN | |
| Plaintiff, | |
| v. | Case No. 2:21-cv-4080-NKL |
| KILOLO KIJAKAZI,<br>Acting Commissioner of Social Security, | |
| Defendant. | |

## <u>ORDER</u>

Steven Chamberlin appeals the final decision of the Commissioner of the Social Security Administration (the "Commissioner") denying his application for supplemental social security income under Title XIV of the Social Security Act. Doc. 1 (Social Security Complaint); Doc. 12 (Chamberlin's Social Security Brief). Chamberlin argues that the Administrative Law Judge ("ALJ") erred by disregarding a remand order and the ALJ's weighing of the medical opinions was not supported by substantial evidence. For the reasons stated below, the ALJ's decision is remanded with an instruction to award benefits.

## I.    BACKGROUND

On May 26, 2015, Chamberlin applied for disability insurance benefits. He claimed a disability onset date of December 15, 2005. On June 9, 2015, Chamberlin applied for supplemental social security income and alleged the same disability onset date. Chamberlin was 51 years old when he applied. He claimed his OCD, Bipolar Disorder, depression, hyperthyroidism, diverticulitis, colitis, severe anxiety, crying spells, and panic attacks were disabling. On October 29, 2015, the Commissioner's State Agency denied Chamberlin's applications. Chamberlin

requested a video hearing, which was held on June 28, 2017. Chamberlin then changed his disability onset date to July 29, 2015.[1] This led the ALJ to dismiss Chamberlin's claims for disability insurance benefits, which Chamberlin did not contest. On November 8, 2017, the ALJ rejected the remaining claim for supplemental social security income. On March 26, 2018, the Appeals Council declined to exercise jurisdiction. Chamberlin then appealed to this Court, and the honorable Judge Maughmer remanded the decision back to the Commissioner. *See infra*, Section I.C.

On April 15, 2020, another telephonic hearing was held. On June 1, 2020, the ALJ again denied Chamberlin's application. On February 8, 2021, the Appeals Council declined to exercise jurisdiction. Chamberlin then appealed to this Court.

### A. Medical History

Chamberlin reports receiving psychiatric treatment since 1998. Tr. 243. On August 1, 2013, Chamberlin saw his treating physician, Kathleen Robbins. Tr. 223. Dr. Robbins stated that Chamberlin suffered from depression—that was worsening due to a divorce and his father's death—insomnia, a lack of appetite, and anxiety. *Id.* Chamberlin reported that he was crying a lot and was not functional. *Id.* He had previously been prescribed Xanax, Synthroid, Zoloft, and other medications. *Id.* Dr. Robbins examined Chamberlin and found that Chamberlin was alert and oriented with normal mood, speech, and behavior. Tr. 224. She ordered a refill of Chamberlin's Zoloft and referred him to a psychiatrist. Tr. 224-25.

On September 16, 2013, Chamberlin reported to Lake Ozark Medical Clinic to reestablish treatment for his depression and anxiety. Tr. 240. He was diagnosed with anxiety and depression.

---

[1] Chamberlin was previously a self-employed cattle farmer.

*Id.* The Clinic proscribed him Tranxene for his anxiety. Tr. 240. He denied being depressed. Tr. 240-41. He returned to Lake Regional on October 11, 2013. Tr. 238. He was again diagnosed with anxiety and depression. The Clinic prescribed him Xanax for anxiety. *Id.* He returned on January 2, 2014, and was again diagnosed with anxiety and depression. Tr. 236. They refilled his Tranxene and Zoloft prescriptions and started him on a second antidepressant—Elavil. *Id.* On April 29, 2014, he returned and was again diagnosed with anxiety and depression. They prescribed him another antidepressant—Straterra. Tr. 234. On June 28, 2014, Chamberlin was again diagnosed with depression and anxiety and Lake Regional proscribed him Prozac. Tr. 232.

On March 31, 2015, Chamberlin went to Pathways Community Behavioral Health for a pre-intake evaluation. Tr. 242. Chamberlin reported crying all day, struggling to concentrate, no interest in activities, feeling anxious and nervous, restlessness, and constantly worrying. *Id.* The clinician observed he had restless body posture, was agitated with rapid speech, spoke with a free flight of ideas, and was oriented to time, place, and surroundings. Tr. 242. Chamberlin did not report hallucinations or delusions. *Id.* He was diagnosed with depression and anxiety. *Id.*

On May 1, 2015, he was seen for a psychiatric evaluation. He reported taking Straterra, Seroquel, Zoloft, Prozac, and Elavil. Tr. 243. He stated his depression improved since taking Seroquel. *Id.* The doctor reported he was talkative and grandiose with elated effect. Chamberlin stated when he is angry it is hard to control and can "take many people." *Id.* He again reported crying all day since his divorce and the death of his father. *Id.* Chamberlin's attention and concentration were good, he had a normal thought process, and average intelligence. Tr. 244-45. His judgment was fair, but he was distractible, impulsive, grandiose, irritable, and had both racing thoughts and abnormally high energy. Tr. 245. He was diagnosed as a bipolar depressive with multiple physical ailments. *Id.*

3

On September 1, 2015, Chamberlin went to Pathways for a medication evaluation. Tr. 250. Chamberlin stated he disliked the previous Pathways doctor because he did not prescribe the medications Chamberlin wanted. *Id.* Pathways noted Chamberlin was positive for depression, anxiety, and mood swings; cooperative, fidgety, alert, and oriented; his memory was intact; his insight, judgment, and impulse control were poor; his fund of knowledge was average; and his speech was rapid and pressured. *Id.* Chamberlin said he took Tranxene, Seroquel and Zoloft daily. He was assessed with bipolar depressive episodes and other physical ailments. *Id.* On October 12, 2015, Chamberlin reported to Pathways. Tr. 259. He was upset due to receiving a letter from Pathways that said he had missed appointments. *Id.* On November 24, 2015, he again went to Pathways. He was diagnosed with mixed to moderate Bipolar Disorder, chronic PTSD, anxiety, and OCD. Tr. 289. Pathways noted that Chamberlin was cooperative and fidgety; his speech was at an increased rate; his mood was anxious; his thought process was logical, and goal-directed; his insight, judgment and impulse control were poor; and his fund of knowledge was average. *Id.*

On February 11, 2016, Chamberlin's mother called and stated she was worried about her son because he had locked himself in the house and would not come out or talk to anyone. Tr. 296. Chamberlin's mother stated that Chamberlin did not take his medications and needed to be on disability. *Id.* On February 17, 2016, Pathways addressed Chamberlin's attitude and behavior in the office, his missed appointments, and his noncompliance with medications. Tr. 297. Chamberlin stated he had a breakdown and locked himself inside his house. *Id.* He admitted he does not take his medication and apologized for yelling at Pathways staff. *Id.*

On February 18, 2016, Chamberlin met with a Pathways psychiatrist and stated he destroyed everything in his house when he had a breakdown, wanted help, and will do whatever it takes. Tr. 302. On February 24, 2016, Chamberlin returned to Pathways and said he had been in

bed with depression for 3 weeks; he requested a medical injection. Tr. 299. Pathways noted that he was cooperative, fidgety, and had rapid pressured speech; his mood was anxious and depressed; his thought process was logical and goal-directed; his memory was intact; his insight, judgment, and impulse control were poor, and his fund of knowledge was average. Tr. 300. He was again diagnosed with moderate Bipolar Disorder and chronic PTSD. Tr. 300-01. His current medications were discontinued, and he was proscribed the Invega injection instead. Tr. 301. The psychiatrist said Chamberlin needed to receive an injection due to his medication noncompliance. Tr. 302. Chamberlin reported to Pathways on March 16, 2016, stating he needed Tranxene. Tr. 306. He said his mood improved with the injection, but that he would like to remain on Tranxene for anxiety. His examination results were similar except his mood was blunted. Tr. 307. He was again diagnosed with moderate Bipolar Disorder and chronic PTSD. On March 16, 2016, Chamberlin reported that he liked taking the injection. Tr. 309.

On July 19, 2016, Chamberlin told Pathways he was abused as a child and still had nightmares. Tr. 315. He asked to increase his Tranxene and Zoloft dosage. *Id.* Pathways reported that Chamberlin acted belligerently with the staff; and after his angry outbursts, he would call back and apologize. On June 29, 2016, he reported he could not tolerate the injection and was taking Zoloft and Tranxene. Tr. 311. He was diagnosed with moderate Bipolar Disorder, anxiety, OCD, and chronic PTSD.

On August 11, 2016, Chamberlin reported to Pathways that he cries every day and does not know why. Tr. 320. He was diagnosed with Bipolar Disorder, PTSD, OCD, and anxiety. Tr. 321. Chamberlin was put on the "no show" list due to his missed appointments and was again counseled about his language and actions when at appointments. Tr. 322. On October 27, 2016, Pathways told Chamberlin that they had terminated his care. Tr. 327. They stated he could get

5

his medications from another doctor. *Id.* Chamberlin stated he had been a "gentleman" and that the doctor lied about him cussing and yelling. Tr. 328.

On November 15, 2016, Chamberlin returned to Lake Ozark Medical Clinic and was seen by Dr. Robbins. Tr. 330. The doctor stated he was negative for depression with normal mood and affect but had anxiety. Tr. 331. He was prescribed Clonazepam, his prescription for Zoloft and Synthroid were refilled, and it was noted that he was also taking Xanax. Tr. 332. On April 5, 2017, Chamberlin saw Dr. Robbins for an unrelated issue, and she noted he had normal, mood, affect and behavior.

On July 26, 2017, Chamberlin returned to Lake Ozark Medical Clinic. Tr. 632. He was diagnosed with anxiety and a "mild single current depressive episode." Tr. 633. They reported his depression has been well-controlled and he was taking his medication. *Id.* On April 12, 2018, he reported to the Lake Ozark Medical Clinic that he had to go to court over a "felony fleeing when he was having a panic attack." Tr. 643. He was diagnosed with anxiety and depression. Tr. 643. He was taking Tranxene, Zoloft, and Synthroid. He was referred to a psychiatrist. Tr. 645.

On July 11, 2019, Chamberlin was seen at Lake Regional Medical Group. Tr. 659. He was noted to have a normal mood and affect. Tr. 660. He was diagnosed with anxiety, panic attacks, PTSD, and depression. Tr. 660. He was taking Abilify, Tranxene, Zoloft, and Synthroid. Tr. 659. During the encounter he "exhibited threatening behavior and scared patients." Tr. 661. On October 17, 2019, he was seen at Lake Regional for a general check-up. Tr. 662. He claimed that he had been out of his medication for 17 days and "it had been hell"—with extreme depression and panic attacks. Tr. 662. He was diagnosed with anxiety, depression, and PTSD. Tr. 663. On March 30, 2022. he had an annual wellness review at Lake Regional. Tr. 665. Chamberlin reported that he felt well and that his present anxiety is under control. *Id.* He was diagnosed with

anxiety, depression, and PTSD. The Clinic ordered him Tranxene, Synthroid, Zoloft and Xanax. He was encouraged to meditate. Tr. 666.

### B. Medical Opinions

Dr. Bucklew is a state agency psychological consultant. In October of 2015, he made the initial disability determination. Dr. Bucklew reviewed Chamberlin's work history, seven medical records that were created between July and October of 2015, and Chamberlin's functional report. Tr. 57-59, 63-65. Dr. Bucklew determined that Chamberlin was not disabled. Dr. Bucklew found that Chamberlin's affective disorders and anxiety disorders were severe. However, he found Chamberlin's subjective complaints were not substantiated by the objective medical evidence because with "abstinence from substance abuse and treatment compliance, claimant is able to remember, understand and complete at least simple routine tasks with usual supervision and instructions." Tr. 68. He also found that Chamberlin had no understanding and memory limitations; could sustain concentration and persistence; was not significantly limited in his ability to carry out very short and simple instructions, perform activities within a schedule, complete a normal workday without interruptions from psychologically based symptoms, ask simple questions or request assistance; and was only moderately limited in his ability to carry out detailed instructions, work in coordination with others, and respond appropriately to changes in the workplace. Tr. 59-61, 67-70.

Dr. Robbins was Chamberlin's primary care provider. She interacted with Chamberlin on at least four occasions. Tr. 329-43. In May of 2017, Dr. Robbins stated that Chamberlin accused her staff of stealing, has anxiety daily with fairly frequent panic attacks, cannot interact appropriately with coworkers, has great difficulty leaving the house due to a fear of law enforcement and anxiety dealing with other people, struggles with paranoia, and cannot follow

7

instructions because his anxiety and medication impair his concentration. Tr. 344. Consequently, she determined that Chamberlin is "incapable of gainful employment due to the severity of his mental health issues." *Id.*

On March 27, 2017, Dr. Adams performed a clinical interview and a psychological consultative examination to help determine if Chamberlin was eligible for state Medicaid benefits. Tr. 261-64. Dr. Adams did not explicitly make a disability finding. During the examination, Chamberlin's speech was rapid and pressured, he recalled zero out of three words after five minutes without hints, he could repeat two digits forwards and three digits backward, he could not count down from 100 by 7s, and he could spell "world" forward but not backward. Dr. Adams stated that Chamberlin's general fund of information was average, verbal concepts were understood at an average level, judgment and impulse control were poor, and intelligence is estimated as low average. Tr. 263. He recommended treatment with a mood stabilizer and psychotherapy. Tr. 264. Dr. Adams stated Chamberlin does not seem able to understand and remember simple instructions, sustain his concentration and persistence on simple tasks, interact in moderately demanding social situation, or adapt to a typical work environment. *Id.*

### C. First ALJ Decision

After the first hearing, the ALJ determined that Chamberlin had not engaged in substantial gainful activity since July 29, 2015. Tr. 19. The ALJ determined that Chamberlin's anxiety, Bipolar Disorder, PTSD, and OCD were severe impairments. *Id.* The ALJ decided Chamberlin's hypothyroidism, multiple skin nodules, and ulceration were not severe. The ALJ stated that Chamberlin had the residual functional capacity ("RFC") to

> Perform a full range of work at all exertional levels but with the following non exertional limitations: he must avoid concentrated exposure to dangerous machinery and unprotected heights. He can perform work limited to simple, routine

tasks with few workplace changes and no fast-paced production work. He can have occasional interaction with the public, coworkers, and supervisors.

Tr. 21. The ALJ explained that Chamberlin's subjective complaints of disabling depression, panic attacks, and inability to concentrate, were not substantiated by Chamberlin's daily activities—living alone, taking care of two dogs, preparing simple meals, shopping in stores, going outside, driving, and helping his friends—the conservative nature of Chamberlin's treatment, Chamberlin's improvement with treatment, and Chamberlin's medical records. Tr. 24-25.

The ALJ gave Dr. Robbins' opinion little weight. The ALJ stated she complied with 20 CFR § 416.927(c) and considered the following factors: the examining relationship, the treatment relationship, supportability, consistency, specialization, and other factors. Tr. 25. She gave the opinion little weight because Dr. Robbins did not specialize in psychology; Dr. Robbins only evaluated Chamberlin three times for mental health issues over a nine-year period; Dr. Robbins' opinion on Chamberlin's disability status was a determination reserved to the Commissioner; and Dr. Robbins' opinion was inconsistent with her treatment records—which show a normal mood, affect, and behavior—Chamberlin's lack of subjective complaints about his medication's side effects, other medical records, and Chamberlin's daily activities. *Id.*

The ALJ gave Dr. Adams' opinion limited weight because it was rendered under the Missouri Department of Social Services' definition of disability, it was based on Chamberlin's false statement that he had attended therapy consistently for years, and Dr. Adams' finding that Chamberlin could not concentrate was contradicted by the fact that Chamberlin had rebuilt bicycles. Tr. 26. However, the ALJ found Dr. Adams' opinion that Chamberlin could not interact in moderately demanding social situations consistent with the record and limited him to no more than occasional interactions with coworkers and the public. *Id.*

9

The ALJ gave Dr. Bucklew's opinion great weight because it was consistent with (1) the medical records which showed that Chamberlin's memory was intact, but his memory, insight, judgment, and impulse control were poor; and (2) Chamberlin's daily activities. Tr. 26. The ALJ noted that she added limitations into the RFC on Chamberlin's exposure to heights, machinery, workplace changes, and fast-paced work that Dr. Bucklew did not include because the ALJ found the limitations were necessary.

The ALJ determined someone with Chamberlin's age, education, work experience, and RFC could be a hospital cleaner, industrial cleaner, or store labor—which were jobs that existed in significant numbers in the national economy. Tr. 28. Consequently, she determined that Chamberlin was not disabled. Tr. 29.

### D. Judge Maughmer's Remand

Chamberlin appealed the first ALJ's decision and argued that the ALJ's weighing of the opinion evidence was not supported by substantial evidence. Judge Maughmer remanded the decision. Tr. 457-61. He found that the ALJ's decision to grant Dr. Bucklew's opinion great weight, and some of the reasons given to discredit Dr. Robbins' and Dr. Adams' opinions, were not supported by substantial evidence. *Id.*

Judge Maughmer determined that it was important that Dr. Adams and Dr. Robbins had examined Chamberlin in person while Dr. Bucklew had not. Tr. 458-59. He found that Dr. Adams' opinion regarding Chamberlin's ability to follow instructions was relevant regardless of if it was rendered in connection with a state Medicaid decision. Tr. 459. He stated Dr. Robbins' opinion on Chamberlin's medication's side effects needed to be analyzed regardless of whether Chamberlin complained about the side effects because, as a doctor, she was entitled to give those opinions. Tr. 459-60. He conceded that Dr. Robbins' opinion that Chamberlin was disabled was

properly disregarded but found that Dr. Robbins' opinions regarding Chamberlin's inability to go outside, follow instructions, or work with others merited scrutiny. Tr. 460. Judge Maughmer said it was "significant" that the opinions of Dr. Robbins and Dr. Adams were relatively consistent with each other. *Id.* Lastly, he said that while not conclusive, it was a relevant factor that both the opinions of Dr. Adams and Dr. Robbins were offered two years "closer to the decision point" than Dr. Bucklew's. *Id.*

Judge Maughmer ordered the ALJ to re-examine the appropriate weight that should be given to the medical opinions. Tr. 460.

### E. The Second Decision

On remand, the ALJ found that Chamberlin had the same severe impairments as the original decision. Tr. 358. The only change to the RFC was that Chamberlin was no longer precluded from jobs that required more than a few workplace changes. *Compare* Tr. 21, *with* Tr. 360. The ALJ again found that Chamberlin's subjective complaints were not substantiated by the record. Tr. 363-64. The ALJ found that Chamberlin "did not generally receive the type of medical treatment one would expect for a totally disabled individual" because he was never hospitalized or in need of emergency treatment despite his lack of medication compliance. Tr. 363. Furthermore, the ALJ cited to the fact that Chamberlin improved with medication as evidence Chamberlin was not disabled. She also found that Chamberlin's explanation that he missed therapy due to a lack of time or money unsubstantiated because he never complained to Pathways who reported he only wanted help with his legal problems. Tr. 364. Lastly, the ALJ stated Chamberlin's daily activities were inconsistent with his testimony that he could not do anything when he was depressed or has anxiety around other people. Tr. 364.

The ALJ again gave Dr. Adams' opinion little weight. Tr. 364-65. The ALJ stated that

Dr. Adams' opinion was not fully supported by Dr. Adams' examination where Chamberlin was noted to be oriented, alert, responsive with appropriate eye contact, and have an average general fund of information. *Id.* Furthermore, the ALJ found that Chamberlin's free flight of ideas, pressured speech, and poor performance on memory and concentration tasks, did not support the extreme limitations indicated by Dr. Adams. Tr. 365. She also found the opinion was inconsistent with other doctors' treatment records which indicated that Chamberlin's severe symptoms improved with treatment.

The ALJ again gave Dr. Robbins' opinion limited weight. Tr. 365. The ALJ found that Dr. Robbins' statement that Chamberlin was disabled could be disregarded because that decision was reserved to the Commissioner. *Id.* The ALJ determined that Dr. Robbins' statements regarding Chamberlin's functional limitations were not supported by her own treatment records which showed normal mood, affect, and behavior; Chamberlin's daily activities; and Chamberlin's improvement with treatment. *Id.*

The ALJ gave Dr. Bucklew's opinion some weight. *Id.* She found that even though the opinion was provided in 2015, it was consistent with the conservative nature of Chamberlin's treatment, and the examination records that show persistent issues with anxiety and depression, but improved stability during periods of medication compliance. *Id.*

The ALJ again found that Chamberlin was not disabled because he could perform work that existed in significant numbers in the national economy. Tr. 367 (stating Chamberlin could work as a linen room attendant or kitchen helper).

## II.     LEGAL STANDARD

"The Court must affirm the Commissioner's denial of social security benefits so long as 'there was no legal error' and 'the findings of fact are supported by substantial evidence on the

record as a whole.'" *Alhilfy v. Saul*, No. 4:20-CV-00235-NKL, 2021 WL 462122, at *2 (W.D. Mo. Feb. 9, 2021) (quoting *Brown v. Colvin*, 825 F.3d 936, 939 (8th Cir. 2016)). "'Substantial evidence' is less than a preponderance but enough that a reasonable mind could find the evidence adequate to support the ALJ's conclusion." *Id.* (citing *Milam v. Colvin*, 794 F.3d 978, 983 (8th Cir. 2015)). The Court must consider evidence that both supports and detracts from the Commissioner's decision but cannot reverse the decision because substantial evidence also exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently. *Andrews v. Colvin*, 791 F.3d 923, 928 (8th Cir. 2015).

## III.    Discussion

Chamberlin argues that (1) the ALJ failed to follow Judge Maughmer's order, (2) the ALJ's decision was not supported by substantial evidence. The Court considers Chamberlin's arguments in turn.

### A.  Whether the ALJ Followed Judge Maughmer's Order

If the ALJ failed to follow Judge Maughmer's order, then she committed legal error that warrants remand. *See Sullivan v. Hudson*, 490 U.S. 877, 886 (1989) ("Deviation from the court's remand order in the subsequent administrative proceedings is itself legal error subject to reversal on further judicial review."). The ALJ's decision must follow the "letter and spirit" of the remand order. *Winberry v. Colvin*, No. 14-2182, 2015 WL 1893941, at *3 (W.D. Ark. Apr. 27, 2015) (citing *Thornton v. Carter*, 109 F.2d 316, 320 (8th Cir.1940)).

The ALJ did not follow Judge Maughmer's order when she reassessed the medical opinion evidence. Even though Judge Maughmer found it "significant" that Dr. Robbins' and Dr. Adams' opinions were consistent with each other, the ALJ neither mentioned this when she weighed their opinions nor increased the weight given to their opinions. Tr. 364-65. The ALJ similarly did not

address Judge Maughmer's determination that it was relevant that Dr. Adams and Dr. Robbins were able to perform in-person mental evaluations, while Dr. Bucklew was not, when reweighing the opinions.[2]  Ignoring Judgment Maughmer was reversible error.  *Id*; *see also Lawton v. Astrue*, No. C11-0013, 2012 WL 426281, at *14 (N.D. Iowa Feb. 9, 2012) (holding it was an error for the ALJ to ignore a remand order's instruction regarding how to weigh opinion evidence).

Furthermore, while the new ALJ did not state she was penalizing Dr. Robbins for having an opinion on Chamberlin's medication's side effects despite Chamberlin's lack of complaints; she effectually ignored Judge Maughmer's order by not increasing the weight given to Dr. Robbins' opinion even though she could not consider one of the original reasons given to discredit the opinion.  The ALJ similarly effectively ignored Judge Maughmer's order that Dr. Adams' opinion could no longer be discredited because it was given in connection with a state Medicaid determination, when she did not increase the weight given to Dr. Adams' opinion.

While the ALJ gave Dr. Bucklew's opinion only some weight on remand when the original ALJ gave the opinion great weight; the ALJ violated the spirit of the remand order because the ALJ gave the opinion more weight than Dr. Robbins' and Dr. Adams' opinions without addressing the concerns expressed by Judge Maughmer.

While Judge Maughmer did not explicitly direct the ALJ to give controlling weight to the opinions of Dr. Adams and Dr. Robbins, he provided multiple reasons why the ALJ's decision to give more weight to Dr. Bucklew's opinion was not supported by substantial evidence.  Without some explanation by the ALJ to dispel those specific concerns, the ALJ violated the spirit of Judge

---

[2] The ALJ addressed the fact that Dr. Bucklew's opinion was two years older when determining what weight to give Dr. Bucklew's opinion but did not mention this when analyzing what weight to give to Dr. Robbins' or Dr. Adams' opinions.

Maughmer's order. Indeed, the only change made by the ALJ to the RFC was to find that Chamberlin needed fewer restrictions than previously found by the first ALJ. Tr. 360, 367.

The Commissioner provides four reasons the Court should find it complied with Judge Maughmer's order. First, the Commissioner argues that the ALJ was required only to reassess the evidence and "provid[e] discussion and reason for the weight given to each opinion." However, Judge Maughmer did not provide the ALJ a blank canvass on which to reassess the medical opinions. Rather, he identified several issues that required express consideration and explanation.

Second, the Commissioner argues that the Court's only role is to determine whether the ALJ's weighing of the evidence was supported by substantial evidence. The Commissioner's argument is normally correct. *Klopfenstein v. Saul*, No. 4:18-CV-01106 JAR, 2019 WL 4419009, at *6 (E.D. Mo. Sept. 16, 2019) ("Once the ALJ has decided how much weight to give a medical opinion, the Court's role is limited to reviewing whether substantial evidence supports this determination, not deciding whether the evidence supports the plaintiff's view of the evidence." (citing *Brown v. Astrue*, 611 F.3d 941, 951 (8th Cir. 2010))). However, when an ALJ has been provided an order on remand, it is not free to disregard that order even if the ALJ's new decision is supported by substantial evidence. *Sullivan*, 490 U.S. at 886 (holding the failure to follow a remand order is itself reversible legal error); *Kaddo v. Comm'r of Soc. Sec.*, 238 F. Supp. 3d 939, 944 (E.D. Mich. 2017) ("[T]he failure by an ALJ to follow a remand order . . . can constitute a reversible error in federal court. This holds true regardless of whether substantial evidence otherwise supports the Commissioner's final decision."); *see also Nolte v. Comm'r of Soc. Sec.*, No. 3:18-CV-183, 2019 WL 3369217, at *4 (S.D. Ohio July 26, 2019) (same). Additionally, as discussed below, the ALJ's decision is not supported by substantial evidence. *See infra* Section III.B.

Third, the Commissioner argues substantial evidence supported the ALJ's decision to discredit Chamberlin's subjective complaints, and this lead the ALJ to give Dr. Robbins' and Dr. Adams' opinions less weight since they were based on Chamberlin's complaints. However, the ALJ did not state she gave Dr. Adams' and Dr. Robbins' opinions little weight because Chamberlin's subjective complaints had been discredited, and the Court will not consider the Commissioner's post hoc justification. *See May v. Astrue*, No. 09-CV-03480-NKL, 2010 WL 3257848, at *9 (W.D. Mo. Aug. 16, 2010) ("The Commissioner's post hoc analysis of the medical records in this case is insufficient when none of these reasons were provided in the ALJ's opinion."); *Frazier v. Astrue*, No. 10-03315-CV-S-DGK, 2011 WL 3510993, at *3 (W.D. Mo. Aug. 10, 2011) ("[I]t is well established that the Court should review the actual basis for the ALJ's decision, not 'post-hoc rationalizations to explain the Commissioner's treatment of evidence when that treatment is not apparent from the Commissioner's decision itself.'" (quoting *Grogan v. Barnhart*, 399 F.3d 1257, 1263 (10th Cir. 2005))).

Fourth, the Commissioner argues that the ALJ did not disregard Dr. Robbins' opinion because she placed significant limitations in the RFC. However, the RFC cannot be evidence that the ALJ complied with Judge Maughmer's order because it became less restrictive on remand. That is certainly not consistent with the spirit of Judge Maughmer's order.

### B. Whether the Weight Given to the Medical Opinions is Supported by Substantial Evidence

The ALJ's decision must also be remanded because the ALJ's weighing of the medical opinions is not supported by substantial evidence.[3] The ALJ was allowed to consider whether the

---

[3] The Social Security Regulations regarding how to weigh medical opinions were recently changed. *See* 20 C.F.R. § 404.1520c. However, Chamberlin filed his application for supplemental social security income on June 9, 2015. Consequently, 20 C.F.R. § 404.1527 applies to his claim.

medical opinions were consistent with the record because consistency is an important consideration when weighing medical opinions. 20 C.F.R. § 404.1527(c)(4) (stating that if the treating source is not given controlling weight the ALJ must consider if the opinion is consistent with the overall record). However, it is not the sole consideration when as here, no opinion was given controlling weight. 20 C.F.R. § 404.1527(c) (stating if no opinion is given controlling weight, then the ALJ will consider *all* of the following factors when weighing the opinion evidence: whether the doctor examined the claimant, whether there is a treatment relationship, the opinion's supportability—defined as the amount of relevant evidence produced and the quality of the explanation provided in support of the opinion, whether the opinion is consistent with the overall record, whether the opinion relates to the doctor's specialty, and other factors) (emphasis added).

Thus, it was legal error for the ALJ to only consider the opinion's consistency with the record when weighing the medical opinions, when the Social Security regulations, make clear that the ALJ needed to analyze the remaining factors. *See Carter v. Sullivan*, 909 F.2d 1201, 1202 (8th Cir. 1990) ("This court has previously held that an agency's failure to follow its own binding regulations is a reversible abuse of discretion."); *Browning v. Colvin*, No. CV 13-5038-JLV, 2016 WL 1261059, at *3 (D.S.D. Mar. 30, 2016) ("Finally, in determining the appropriate amount of weight to give Dr. Frost's opinions, as Mr. Browning's treating physician, the ALJ was required to consider all of the factors articulated in 20 CFR § 404.1527(c).").

It was similarly legal error for the ALJ to ignore the fact that Dr. Robbins and Dr. Adams had evaluated Chamberlin while Dr. Bucklew had not because 20 C.F.R. § 404.1527(c)(1) required

---

*See* 20 C.F.R. § 404.1527 (stating the regulation still applies to all claims filed before March 27, 2017).

the ALJ to consider whether a medical source examined Chamberlin when weighing the evidence. *See Carter*, 909 F.2d at1202; *Kuikka v. Berryhill*, No. 17-CV-374 (HB), 2018 WL 1342482, at *4 (D. Minn. Mar. 15, 2018) ("The opinion of an examining medical source is entitled to more weight than an opinion from a medical source who has not examined the claimant."); *Stewart v. Berryhill*, No. 3:16-CV-00093-JTR, 2017 WL 1955331, at *3 (E.D. Ark. May 11, 2017) (holding it was error to reject an examining physician's opinion because it was contradicted by a state consultant who only reviewed medical records).

This error was particularly troublesome because Dr. Robbins was Chamberlin's treating physician and, under 20 C.F.R. § 404.1527, her opinion was entitled to deference. *See* 20 C.F.R. § 404.1527(c)(2) ("Generally, we give more weight to medical opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone. . . . ."); SSR 96-2p, 1996 WL 374188, at *4 (July 2, 1996) ("Treating source medical opinions are still entitled to deference and must be weighed using all the factors presented in 20 CFR §§404.1527 and 416.927. This is true even if it was contradicted by substantial evidence in the record."). Put simply, Dr. Robbins and Dr. Adams formed their opinions through in person evaluations of Chamberlin's capabilities while Dr. Bucklew analyzed a few outdated records. The ALJ had to balance this factor against how consistent those opinions were with the remainder of the record. She failed to do this.

Second, the ALJ's analysis of whether the opinions were consistent with the record was also not supported by substantial evidence. The ALJ discredited Dr. Adams' opinion because Chamberlin was "oriented, alert, responsive, with appropriate eye contact, casual clean

appearance, an average fund of information, euphoric mood and consistent affect." Tr. 364-65. The fact that Chamberlin was euphoric,[4] dressed himself appropriately, knew where he was, looked an examiner in the eyes and had an average fund of information does not contradict Adams' findings that Chamberlin does not have the functional capacity to sustain concentration, understand or remember simple instructions, interact in moderately demanding social situations, or adapt to a typical work environment. Successfully adapting to, and socializing at, work requires more than a good mood, knowing where you are, and the ability to look someone in the eye. Furthermore, having an average fund of information does not mean Chamberlin had the ability to concentrate or remember new information.

The ALJ discredited Dr. Robbins' specific limitations because the record "indicate[es] a greater degree of activities of daily living than Dr. Robbins indicates is possible." Tr. 365. Chamberlin reports that he cared for his two dogs, helped his friend, prepared meals, cleaned his house, mowed the lawn, drove, went outside daily, shopped in stores, volunteered, attended church, rebuilt old bicycles, and socialized with friends. Tr. 364. While Chamberlin's activities contradict Dr. Robbins' assertion that Chamberlin would struggle to leave the house daily, Chamberlin's ability to socialize with his friends does not show that he could interact with coworkers under the pressures that accompany working, nor does his ability to take care of himself or rebuild old bicycles at his own pace show that he could follow instructions at the pace that would be needed to maintain employment. *Nowling v. Colvin*, 813 F.3d 1110, 1122 (8th Cir. 2016) ("Participation in activities with family or activities at home and at 'your own pace' may not reflect

---

[4] Euphoria is a symptom of bipolar disorder. *See* The Mayo Clinic, *Bipolar Disorder* https://www.mayoclinic.org/diseases-conditions/bipolar-disorder/symptoms-causes/syc-20355955. The ALJ did not explain how Chamberlain having euphoria, a symptom of the mental illness he was diagnosed with, discredits Dr. Adam's medical opinions.

19

an ability to perform at work."); *Barnhart*, 425 F.3d 1127, 1131 (8th Cir. 2005) ("[T]o find a claimant has the residual functional capacity to perform a certain type of work, the claimant must have the ability to perform the requisite acts day in and day out, in the sometimes competitive and stressful conditions in which real people work in the real world.").

The ALJ determined that Dr. Bucklew's opinion that Chamberlin could complete simple tasks was supported by the fact that Chamberlin had a "conservative treatment history." Tr. 365. However, Chamberlin has sought psychiatric treatment since 2013; was repeatedly diagnosed with anxiety, depression, PTSD, OCD, and bipolar disorder; took between three and six different medication at a time to combat his mental impairments; tried at least 10 different medications to combat his mental impairments; received mental health treatment from multiple clinics and his primary care doctor; tried having his medication be injected to improve his treatment results; and repeatedly lashed out at hospital staff causing Pathways to terminate their relationship. The ALJ's determination that this treatment history was "conservative" was not reasonable. *Arevalo v. Berryhill*, No. 4:16-CV-04173-KES, 2018 WL 626275, at *7 (D.S.D. Jan. 30, 2018) (finding a medical history of being prescribed multiple treatments and attending years of physical therapy did not contradict medical source's opinion that claimant could not work). Furthermore, the ALJ stated that since Chamberlin had never been hospitalized or in need of emergency treatment, his impairments were not disabling, but "[a] claimant is not required to be hospitalized to be found disabled." *Bland v. Saul*, No. 2:18-CV-95 NAB, 2020 WL 1929786, at *8 (E.D. Mo. Apr. 21, 2020) (citing *Reed v. Barnhart*, 399 F.3d 917, 923 (8th Cir. 2005)).

Lastly, the ALJ discredited Dr. Robbins' and Dr. Adams' opinions and supported Dr. Bucklew's opinion because Chamberlin showed "stability" during periods of medication compliance. Tr. 365. "Social Security Ruling 82–59 lists the circumstances under which 'an

individual's failure to follow prescribed treatment will be generally accepted as justifiable and, therefore, such failure would not preclude a finding of disability.'" *Pate-Fires v. Astrue*, 564 F.3d 935, 945 (8th Cir. 2009) (quotation omitted). "[F]ederal courts have recognized a mentally ill person's noncompliance with psychiatric medications can be, and usually is, the 'result of [the] mental impairment [itself] and, therefore, neither willful nor without a justifiable excuse.'" *Id.* (collecting sources)). As a result, when dealing with mental impairments, an ALJ must "take care not to place too much emphasis" on the claimant's lack of treatment compliance. *Willett v. Colvin*, No. C15-4036-LTS, 2016 WL 4582058, at *5 (N.D. Iowa Sept. 2, 2016).

The ALJ both failed to explain why she disregarded the impact Chamberlin's mental impairments had on his treatment compliance and placed great weight on his lack of treatment compliance when weighing the medical opinions. The ALJ stated that she did not find Chamberlin's testimony that he could not afford treatment credible because a Pathways employee stated that Chamberlin was mainly interested in legal problems. To the extent, this evidence shows Chamberlin was capable, but uninterested in taking his medication, it is vastly outweighed by the multiple records that consistently show Chamberlin reaching out to obtain medication or to continue treatment. Tr. 230 (Chamberlin requesting a Tranxene refill); Tr. 234 (Chamberlin requesting a Clorazepate refill); Tr. 236 (Chamberlin requesting medication refills); Tr. 238 (Chamberlin requesting medication refill); Tr. 240 (Chamberlin requesting Xanax refill and counselling referral); Tr. 250 (Chamberlin requesting to speak to a mental health professional); Tr. 251 (Chamberlin requesting to continue his current medications); Tr.266 (Chamberlin requesting Tranxene); Tr. 273 (Chamberlin demonstrating concern about where he would get his medication when Pathways ended their relationship); Tr. 299 (Chamberlin asking for an injection); Tr. 330 (Chamberlin reporting to Lake Ozark after pathways stopped treatment).

Additionally, by citing Chamberlin's intermittent improvement, the ALJ failed to consider the "the waxing and waning nature" of mental impairments. "It is inherent in psychotic illnesses that periods of remission will occur, and that such remission does not mean that the disability has ceased . . . one characteristic of mental illness is the presence of occasional symptom-free periods." *Andler v. Chater*, 100 F.3d 1389, 1393 (8th Cir. 1996) (internal citations and quotations omitted). "Although the mere existence of symptom-free periods may negate a finding of disability when a physical ailment is alleged, symptom-free intervals do not necessarily compel such a finding when a mental disorder is the basis of a claim." *Id.* The volatility of Chamberlin's mental impairments is highlighted by the fact that after Chamberlin reported he had improved he often had mental breakdowns. Tr. 632, 643 (Chamberlin reported experiencing a panic attack that led to criminal charges in the visit after he stated his depression was improving); Tr. 312, 314 (Pathways reported Chamberlin was yelling at staff less than a month after reporting his symptoms were improving). Thus, a few brief periods of improvement do not establish that Chamberlin was capable of working.[5]

Additionally, while the ALJ was entitled to rely upon the medical records that contradicted Dr. Robbins' and Dr. Adams' opinions she was not entitled to cherry-pick evidence that supported her conclusion. *Gaines v. Colvin*, No. 8:15CV207, 2016 WL 617420, at *2 (D. Neb. Feb. 16, 2016) ("An ALJ has the obligation to consider all relevant medical evidence and cannot simply cherry-pick facts that support a finding of non-disability while ignoring evidence that points to a disability finding." (quoting *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010)); *see also Bormes v. Berryhill*, No. 4:16-CV-04155-VLD, 2017 WL 4712215, at *16 (D.S.D. Oct. 18, 2017) ("For

---

[5] The ALJ similarly failed to consider the waxing and waning nature of mental impairments when she discredited Dr. Robbins' opinion based on two evaluations that showed a normal mood and effect on that day.

the ALJ to cherry-pick medical records and recite them in a misleading fashion all the while ignoring the great bulk of the relevant medical evidence in discrediting Mr. Bormes' testimony was error.").

A review of the entire record reveals the following:  Chamberlin received psychiatric treatment for almost a decade; doctors prescribed Chamberlin three to five different medications at a time; doctors prescribed Chamberlin at least ten different medications; he was consistently diagnosed with anxiety, depression, PTSD, OCD, and Bipolar Disorder; doctors repeatedly noted that he had rapid speech, free flight of ideas, either elated or blunted mood, poor judgment and impulse control, average intelligence, and was oriented to time and place; Chamberlin repeatedly yelled at hospital staff; he had multiple panic attacks that often lead to problems with law enforcement; Chamberlin consistently reported that he incessantly cried, was anxious, and had a loss of interest; and the two doctors who evaluated Chamberlin determined he could not perform simple tasks.[6]  The ALJ determined from this almost decades worth of medical records to credit the opinion that stated Chamberlin could perform simple work, and discredit opinions that stated he could not, because on a handful of occasions Chamberlin reported improvement.   This interpretation of the record was not supported by substantial evidence because the ALJ appears to have cherry-picked the few records that supported her conclusion instead of analyzing whether the opinions were consistent with the record as a whole.

*      *      *

---

[6] Chamberlin does not challenge the weight given to Dr. Walker's opinion, but it is notable that based on Dr. Adams' assessment, Dr. Walker determined Chamberlin could not work.

Put simply, the ALJ failed to account for Judge Maughmer's rulings, and there is not substantial evidence to support the ALJ's decision to give greater weight to the opinion of Dr. Bucklew than the other doctors who submitted opinions. Therefore, the ALJ's decision is reversed.

## C. Whether Benefits Should Be Awarded on Remand

Chamberlin argues that the ALJ should be ordered to grant him benefits. A court should remand with an instruction to grant benefits when the record "overwhelmingly supports" a finding of disability. *Pate-Fires v. Astrue*, 564 F.3d 935, 947 (8th Cir. 2009). This is the case when "further hearings would merely delay the receipt of benefits." *Parsons v. Heckler*, 739 F.2d 1334, 1341 (8th Cir.1984).

The medical records in this case overwhelmingly support a determination that Chamberlin is disabled. As stated above, these records show that Chamberlin has been heavily medicated since 2013; despite trying at least 10 different medications, Chamberlin, and his doctors, have been unable to find a medication that can successfully control his symptoms for an extended period of time; Chamberlin has been unable to maintain treatment due to his inability to control his emotions and act appropriately with clinic staff; Chamberlin has repeatedly struggled with impulse control, rapid speech, and blunted or euphoric moods; and on multiple occasions Chamberlin has had mental breakdowns that have caused him to lock himself in his house or get in trouble with law enforcement. Someone with Chamberlin's inability to control his emotions, or work with others, cannot sustain employment, and the evidence the ALJ cited to the contrary—Chamberlin's daily activities, the fact he has not been hospitalized, and the cherry-picked records showing brief periods of improvement—does not change this conclusion. *See supra* Section III.B (explaining why the ALJ's analysis was not supported by substantial evidence).

Additionally, the medical opinion evidence also overwhelmingly supports the conclusion that Chamberlin was disabled. Four different doctors opined on whether Chamberlin could work,[7] and only Dr. Bucklew—a onetime consultative examiner whose opinion does not constitute substantial evidence, *see Jenkins v. Apfel*, 196 F.3d 922, 925 (8th Cir. 1999) ("The opinion of a consulting physician who examines a claimant once or not at all does not generally constitute substantial evidence." (citation omitted))—determined that he could. Furthermore, Dr. Robbins' and Dr. Adams's opinions that Chamberlin's emotional instability and mental processing impairments preclude work are more recent, better supported, and more consistent with the medical records than Dr. Bucklew's opinion. *See supra* Sections III.A, III.B. Thus, once the opinion evidence is properly reweighed it also leads to finding that Chamberlin is disabled.

If the Court were to remand the case, it would only be delaying the award of benefits because both the medical records and opinions—when properly analyzed—necessarily lead to the conclusion that Chamberlin is disabled.

## IV.    CONCLUSION

For the reasons discussed above, the ALJ's decision is reversed and remanded with an instruction to award benefits.

/s/ Nanette K. Laughrey
NANETTE K. LAUGHREY
United States District Judge

Dated: July 25, 2022
Jefferson City, Missouri

---

[7] At oral argument, Chamberlin's counsel stated that Dr. Dale Lockhart has also analyzed Chamberlin and determined his mental impairments were disabling. While this is further evidence that Chamberlin is disabled, the Court does not rely upon this new evidence since it was not part of the Parties' briefing and is not needed to determine that Chamberlin is disabled.